Virginia C. TOBIN, Plaintiff,

v.

The HAVERFORD SCHOOL, Defendant.

. Civil Action No. 94–513.

United States District Court,
E.D. Pennsylvania.

Aug. 9, 1996.

Joseph M. Gontram and Jeffrey P. Zeelander, Ruch, Gontram, Shipon and Skarbek, Philadelphia, PA, for plaintiff.

Thomas J. Bender, Jr. and Kristine M. Derewicz, Buchanan Ingersoll, Professional Corporation, Philadelphia, PA, for defendant.

Kristine M. Derewicz, Buchanan Ingersoll, Professional Corporation, and J. Clayton Undercofler, III, Saul, Ewing, Remick & Saul, Philadelphia, PA, for movants.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Plaintiff Virginia Tobin seeks an award of attorneys' fees, costs, and prejudgment interest, having prevailed in her claim of age discrimination against defendant Haverford School. The issue before the Court is how to calculate the hourly rate to which a lawyer for a prevailing party in an employment civil rights action is entitled for his services. As a corollary, the Court will consider whether the recent Third Circuit decisions in *Griffiths v. Cigna Corp.*, Nos. 94–2090 & 94–2091, slip op. at 12–16, 77 F.3d 462 (3d Cir. Jan. 30, 1996) (unpublished), and *Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1035–37 (3d Cir.1996), represent a departure from prior law and now mandate that the hourly rate for determining the lodestar of a lawyer representing a plaintiff in an employment civil rights case must be calculated solely by reference to the rates charged by other lawyers who represent plaintiffs in employment civil rights cases.

## I

Plaintiff sued defendant Haverford School, alleging that defendant had discriminated against her in violation of the laws of the Commonwealth of Pennsylvania and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, when it failed to hire her for a second grade teaching position and a kindergarten teaching position. Plaintiff sought approximately $287,000 in past and future earnings losses. A jury returned a verdict in favor of plaintiff only on the failure to hire her for the kindergarten

position. The jury awarded plaintiff $24,900 for back pay.

After the entry of judgment, plaintiff moved for attorneys' fees in the amount of $56,953.50, costs in the amount of $2,651.05, and prejudgment interest. At a hearing held on September 19, 1995, the Court reduced the requested hourly rate of plaintiff's counsel from $250 per hour to $185 per hour and reduced counsel's hours from 189.7 hours to 171 hours. The Court also reduced the hourly rate of counsel's junior associate from $115 per hour to $95 per hour and the associate's hours from 60.7 hours to 56.6 hours. The Court then applied a 40% reduction in the lodestar and reduced plaintiff's costs by $500. *See* Orders of 9/21/95, doc. nos. 74 & 75; Transcript of 9/19/95 hearing, doc. no. 79, at 34–40. Based on these calculations, the Court awarded plaintiff $22,207.20 in attorneys' fees, $2,151.05 in costs, and prejudgment interest in the amount of $3,744, for a total of $24,358.25.[1]

Three days after the hearing, plaintiff filed a supplemental motion for attorneys' fees requesting reimbursement for an additional $14,897 in attorneys' fees and $118.12 in costs, a total of $15,015.12, for work performed since the filing of the initial petition. Plaintiff also requested application of prejudgment interest on the attorneys' fees and costs awarded at the September hearing.

In support of her supplemental request, plaintiff submitted the affidavit of Alice W. Ballard, Esquire, a Philadelphia attorney with knowledge of the rates charged by Philadelphia area attorneys who represent plaintiffs in employment rights cases. Ms. Ballard averred that, based on the rates charged by practitioners comparable to plaintiff's counsel, the $250 per hour rate requested by plaintiff in this case is "reasonable." Pl.'s Supp.Mot. for Leave to File a Reply Mem., doc. no. 63, at Ex. 2 ("Ballard Aff."), ¶ 8.

Subsequent to the filing of the supplemental motions, plaintiff's counsel requested reconsideration of the Court's earlier ruling on the appropriate hourly rate to which counsel was entitled in the wake of the Third Circuit's decision in *Griffiths*. On April 9, 1996, the Court held a second hearing on the sup-

---

1. This calculation was based on the underpayment rate set forth in the Internal Revenue Code, 26 U.S.C. § 6621, which is compounded quarterly. *See* Order of 9/21/95, doc. no. 74, at n. 1.

plemental motions and counsel's request for reconsideration in light of *Griffiths.*

The Court concludes that $185 per hour, not $250 per hour, is the rate that an attorney would command in the open market, who possesses skill, experience, and reputation reasonably comparable to plaintiff's counsel, and who performs services similar to those performed by plaintiff's counsel in a litigation analogous to this case; that the Ballard affidavit is insufficient to satisfy plaintiff's burden of proving that the hourly rate requested is the prevailing community market rate based on the interplay of actual market forces; and that the decisions of the Third Circuit in *Griffiths* and *Washington* do not mandate calculation of the community market rate for the performance of similar work solely based on the hourly rates charged by other plaintiffs' attorneys in employment civil rights cases.

## II

A plaintiff who has prevailed on the merits of her ADEA claims is entitled to an award of attorneys' fees pursuant to 29 U.S.C. § 626(b). *See Blum v. Witco Chem. Corp.,* 829 F.2d 367, 377 (3d Cir.1987). "The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b) (1965 & Supp.1996) (as incorporated by 29 U.S.C. § 626(b)).

"The ADEA prohibits age discrimination in employment against any person over age forty. Because the prohibition against age discrimination contained in the ADEA is similar in text, tone, and purpose to that contained in Title VII, courts routinely look to law developed under Title VII to guide an inquiry under ADEA." *Brewer v. Quaker State Oil Refining Corp.,* 72 F.3d 326, 330 (3d Cir.1995) (citations omitted). The Third Circuit has noted that "[s]ince [42 U.S.C.] § 1988 is similar in purpose and design to § 706(k) of Title VII [which provides for recovery of attorneys' fees and costs], cases interpreting § 1988 can be applied to § 706(k) as well." *Sullivan v. Commonwealth of Pennsylvania Dep't of Labor and Indus., Bureau of Vocational Rehabilitation,*

663 F.2d 443, 447 n. 5 (3d Cir.1981) (citations omitted), *cert. denied,* 455 U.S. 1020, 102 S.Ct. 1716, 72 L.Ed.2d 138 (1982).

Because the principles of Title VII jurisprudence would apply in deciding substantive issues in ADEA cases, the same principles should also apply in determining the reasonableness of attorneys' fees and costs. The Court therefore finds that cases interpreting 42 U.S.C. § 1988 can be applied to 29 U.S.C. § 626(b) as well.

## III

### (A)

The calculus in determining the amount of attorneys' fees a prevailing party is entitled to receive in a civil rights action is well-settled. "The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation [by] a reasonable hourly rate." *Blum v. Stenson,* 465 U.S. 886, 888, 104 S.Ct. 1541, 1544, 79 L.Ed.2d 891 (1984) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)) [hereinafter *Blum* ]. This estimate is called the "lodestar." *Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir.1990). Procedurally,

> [t]he party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable. To meet its burden, the fee petitioner must submit evidence supporting the hours worked and rates claimed. In a statutory fee case, the party opposing the fee award then has the burden to challenge by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee. The district court cannot decrease a fee award based on factors not raised at all by the adverse party. Once the adverse party raises objections to the fee request, the district court has a great deal of discretion to adjust the fee award in light of those objections.

*Id.* (internal citations and quotations omitted). Even after calculating the lodestar, "[h]owever, the district court has the discretion to make certain adjustments to the lodestar," if the party opposing the fee petition

has met its "burden of proving that an adjustment is necessary." *Id.* (citations omitted).

Thus, a court makes two reasonableness determinations: the number of hours expended by the attorneys and their hourly rate. Having previously decided the number of hours reasonably expended by plaintiff's counsel, the issue now before the Court is the reasonableness of his hourly rates. *See* Transcript of 4/9/96 hearing, doc. no. 90, at 6; Transcript of 9/19/95 hearing, doc. no. 79, at 36–38.

The Supreme Court has held that the reasonable hourly rates applicable to the labors of attorneys for a prevailing party should be "the prevailing market rate[ ] in the relevant community." *Blum,* 465 U.S. at 895, 104 S.Ct. at 1547. Yet, the Supreme Court also cautioned that

> [m]arket prices of commodities and most services are determined by supply and demand. In this traditional sense there is no such thing as a prevailing market rate for the service of lawyers in a particular community. The type of services rendered by lawyers, as well as their experience, skill and reputation, varies extensively—even within a law firm. Accordingly, the hourly rates of lawyers in private practice also vary widely. The fees charged often are based on the product of hours devoted to the representation multiplied by the lawyer's customary rate. But the fee usually is discussed with the client, may be negotiated, and it is the client who pays whether he wins or loses. The § 1988 fee determination is made by the court in an entirely different setting: there is no negotiation or even discussion with the prevailing client, as the fee—found to be reasonable by the court—is paid by the losing party. Nevertheless, as shown in the text above, the critical inquiry in determining reasonableness is now generally recognized as the appropriate hourly rate. And the rates charged in private representations may afford relevant comparisons.

> In seeking some basis for a standard, courts properly have required prevailing attorneys to justify the reasonableness of the requested rate or rates. To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to—for convenience—as the prevailing market rate.

*Blum,* 465 U.S. at 895 n. 11, 104 S.Ct. at 1547 n. 11. Thus, the Supreme Court recognized the "inherent difficulty" in determining a "market rate" for legal services when, in reality, there exists no "market" in the conventional sense of "economic activity in which buyers and sellers come together and the forces of supply and demand affect prices." Webster's Ninth New Collegiate Dictionary 728 (1988). *See* Paul A. Samuelson, *Economics* 53 (1980) ("[T]he market price reaches its competitive equilibrium ... where the forces of demand and supply are just in balance.").

■ In this circuit, the leading authority for determining the prevailing "market rate" is *Student Pub. Interest Research Group of New Jersey, Inc. v. AT & T Bell Labs.,* 842 F.2d 1436 (3d Cir.1988) [hereinafter *SPIRG* ]. In *SPIRG* the hourly rate charged by a law firm that handled only public interest cases was lower than the rate commanded by "conventional firms performing work of equivalent complexity." *Id.* at 1438. The Third Circuit held that "the community billing rate charged by attorneys of equivalent skill and experience performing work of similar complexity, rather than the firm's billing rate, is the appropriate hourly rate for computing the lodestar." *Id.* at 1450. To determine the "community market rate," the Third Circuit directed courts "to assess the experience and skill of the attorneys and compare their rates to those of comparable lawyers in the *private* business sphere." *Id.* at 1447 (emphasis added); *see also Rode,* 892 F.2d at 1183 ("Thus, the court should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of

reasonably comparable skill, experience, and reputation.") (citing *Blum,* 465 U.S. at 895 n. 11, 104 S.Ct. at 1547 n. 11; *SPIRG,* 842 F.2d at 1447).[2]

■ The prevailing party has the initial burden of demonstrating that the requested rate is the community market rate. *Rode,* 892 F.2d at 1183; *SPIRG,* 842 F.2d at 1450. While "[t]he starting point in determining a reasonable hourly rate is the attorneys' usual billing rate," proof of the billing rate is not dispositive. *Public Interest Research Group of New Jersey, Inc. v. Windall,* 51 F.3d 1179, 1185 (3d Cir.1995) (citations omitted). The prevailing party's burden may be satisfied by the submission of affidavits of attorneys familiar with the hourly rates in the relevant market. *See e.g., Washington,* 89 F.3d at 1035–36 (accepting affidavits of attorneys who represent plaintiffs in civil rights cases which stated that the "requested hourly rate

of $250 was reasonable and within the range of prevailing rates charged by Philadelphia attorneys with [the requesting attorney's] skill and experience") (quoting *Griffiths,* slip op. at 15–16).

■ If the prima facie burden has not been satisfied, the Court exercises its discretion in determining a reasonable hourly rate. *Washington,* 89 F.3d at 1036–37 (quoting *Griffiths,* slip op. at 16); *Rode,* 892 F.2d at 1183. In doing so, the Court considers the evidence before it and may draw upon its personal knowledge of the facts and issues in the litigation. *See Bell v. United Princeton Properties, Inc.,* 884 F.2d 713, 720 (3d Cir. 1989) ("[T]he district court ... may only serve as fact witness when the facts at issue are wholly within its personal knowledge.").

■ Once the prevailing party has met its burden, however, the opposing party must

---

**2.** The Court notes that great deference has been given to the practice of applying market values in adjudicating fee petitions. *See Missouri v. Jenkins by Agyei,* 491 U.S. 274, 284, 109 S.Ct. 2463, 2470, 105 L.Ed.2d 229 (1989) ("In determining how other elements of the attorney's fee are to be calculated, we have consistently looked to the marketplace as our guide to what is 'reasonable.'"); *Blum,* 465 U.S. at 896, 104 S.Ct. at 1547 ("The state and legislative history establish that 'reasonable fees' under § 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel."); *Hensley,* 461 U.S. at 447, 103 S.Ct. at 1947 ("[A]s nearly as possible, market standards should prevail, for that is the best way of ensuring that competent counsel will be available to all persons with bona fide civil rights claims. This means that judges awarding fees must make certain that attorneys are paid the full value that their efforts would receive on the open market in non-civil-rights cases, both by awarding them market-rate fees, and by awarding fees only for time *reasonably* expected.") (Brennan, J. concurring in part and dissenting in part) (citations omitted); *Washington,* 89 F.3d at 1035 (3d Cir.1996) ("The general rule is that a reasonable hourly rate is calculated according to the prevailing market rates in the community.") (citations omitted); *In re Busy Beaver Bldg. Ctrs., Inc.,* 19 F.3d 833, 853 (3d Cir.1994) ("Like any sophisticated consumer of legal services, the ... court should compare the costs of 'equivalent' practitioners of the art (including their billing structures) as well as the applicant's billing practices with 'equivalent' clients."); *Keenan v. City of Philadelphia,* 983 F.2d 459, 475 (3d Cir.1992)

("The district court was, of course, correct in stating that the market rate of compensation must determine the appropriate hourly rate for computing the lodestar. However, we conclude that § 1988 does not preclude use of a uniform billing method where such billing method produces market rates of compensation."); *Rode,* 892 F.2d at 1183 ("Generally, a reasonable hourly rate is to be calculated according to the prevailing market rates in the relevant community."); *SPIRG,* 842 F.2d at 1442 ("Market rates have served as the prime focus of our inquiry in ascertaining reasonable attorneys' fees."); *In re Fine Paper Antitrust Litig.,* 751 F.2d 562, 591 (3d Cir.1984) ("Our premise has been that the reasonable value of an attorney's time is the price that time normally commands in the marketplace for legal services in which those services are offered."); *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161, 167 (3d Cir.1973) ("A logical beginning in valuing an attorney's services is to fix a reasonable hourly rate for his time—taking into account of the attorney's legal reputation and status (partner, associate).... [T]he court may find it necessary to use several different rates for ... different attorneys. Similarly, the court may find that the reasonable rate of compensation differs for different activities."); *see also In re Continental Illinois Sec. Litig.,* 962 F.2d 566, 568 (7th Cir.1992)) ("Markets know market values better than judges do.") (cited with approval in *Busy Beaver,* 19 F.3d at 854). It is therefore clear that both the Supreme Court and the Third Circuit have mandated that a district court grant fee petitions with a full understanding of the market forces affecting billing rate decisions in a market rate where real clients make real judgments as to the value of an attorney's services.

produce affidavits or other submissions which create an issue as to the reasonableness or accuracy of the fee petition. *See id.* ("We see no reason to require that parties objecting to the fee request submit affidavits so long as answers or briefs, if sufficiently specific, can serve the same function of putting the applicant on notice that it must defend its fee petition."). If no opposition to the prevailing party's prima facie case has been offered, the requested rate is the community market rate at which the petitioning attorney may be compensated. *See id.* ("[A] court may not sua sponte reduce the amount of the award when the defendant has not specifically taken issue with the amount of time spent or the billing rate, either by filing affidavits, or, in most cases, by raising arguments with specificity and clarity in briefs (or answering motion papers).") (clarifying *Cunningham v. City of McKeesport,* 753 F.2d 262, 265–66 (3d Cir.1985), *vacated on other grounds,* 478 U.S. 1015, 106 S.Ct. 3324, 92 L.Ed.2d 731 (1986)). If, on the other hand, sufficient opposition has been presented, the determination of the appropriate market rate remains within the discretion of the district court. *Rode,* 892 F.2d at 1183.

### (B)

### (1)

■ In this case, plaintiff requests a fee of $250 per hour for Mr. Gontram, plaintiff's lead counsel. Plaintiff has submitted the affidavits of Mr. Gontram and of Alice Ballard, Esq., in support of her request. *See* Mem. in Support of Mot. for Atty's Fees and Costs, doc. no. 44, at 3–4 ("Gontram Aff."); Pl.'s Supp.Mot. for Leave to File a Reply Mem., doc. no. 63, at Ex. 2 ("Ballard Aff.").[3]

The key to plaintiff's position is Ballard's averment that

I have knowledge of the rates charged by comparable practitioners in [the employment rights litigation] field and I believe that Mr. Gontram's $250 per hour rate for 1995 is reasonable when judged against the rates charged by practitioners with comparable experience and skill in [the employment rights litigation] field.

Ballard Aff. at ¶ 8. The Court finds that this averment is insufficient to satisfy plaintiff's burden of establishing the community market rate.

Ms. Ballard has not averred that she is minimally familiar with either the tasks performed by counsel or the issues litigated in this case. Her unfamiliarity leads to two infirmities in her conclusions.

First, because she is unaware of the specific tasks performed by petitioning counsel in this case, she is not in a position to assign to each of the tasks performed by petitioning counsel its value, either on a task-by-task basis or on the basis of a "blended" rate that comparable attorneys could receive for similar work in the open market. *See Lindy Bros Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161, 167 (3d Cir.1973) ("[T]he court may find that the reasonable rate of compensation [for an attorney] differs for different activities."). As the Third Circuit has noted, "[a] Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn." *Ursic v. Bethlehem Mines,* 719 F.2d 670, 677 (3d Cir.1983). *See also Delaware Valley Citizens' Council for Clean Air v. Commonwealth of Pennsylvania,* 762 F.2d 272, 279 (3d Cir.1985) (awarding counsel fees at paralegal rates for "mundane or minor" work); *In re Fine Paper Antitrust Litig.,* 751 F.2d 562, 591–93 (3d Cir.1984) (awarding associates' rates for tasks performed by partners but which were typically performed by associates or paralegals).

Second, because she is unaware of the issues, Ms. Ballard has failed to take into account the relative simplicity of the proof and the law in this litigation. Instead, she improperly conflates the instant case with all other types of "employment rights litigation." Ballard Aff. at ¶ 7. As Judge Fullam recognized, in the context of determining the hourly rate of counsel for a prevailing party in a recent civil rights case, " '[c]ivil rights cases' vary greatly in nature, and in complexity." *Blanche Road Corp. v. Bensalem Township,* No. 89–9040, slip op. at 13, 1996 WL 368347

---

3. The Ballard Affidavit is set out in full in Appendix "A".

(E.D.Pa. June 25, 1996).[4] Thus, no single rate is applicable to all types of cases.

In short, because Ms. Ballard's admitted unfamiliarity with the facts and issues in the instant case disable her from opining as to either the comparable market rates for various tasks performed by counsel or the relative lack of complexity of the issues in the case, her conclusion that the requested rate of $250 per hour is "reasonable" lacks an adequate factual predicate.[5] *See* Fed. R.Evid. 703 ("The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing."); *see also Hines v. Consolidated Rail Corp.*, 926 F.2d 262, 271 (3d Cir.1991) ("[The medical expert's] intensive and personal investigation of [plaintiff] distinguishes [the expert's] testimony from the testimony excluded by courts in a number of cases cited by [defendant] where there was no evidence in the record that experts ever examined or tested the plaintiff (or assertions) at issue."); *Advent Sys. Ltd. v. Unisys Corp.*, 925 F.2d 670, 682 (3d Cir.1991) ("It is also true that a verdict may not be based on speculation, whether the testimony comes from the mouth of a lay witness or an expert.") (internal

citation and quotations omitted); *Pennsylvania Dental Ass'n v. Medical Serv. Ass'n of Pennsylvania*, 745 F.2d 248, 262 (3d Cir. 1984) ("[T]he factual predicate of an expert's opinion must find some support in the record.") (citing with approval *Merit Motors, Inc. v. Chrysler Corp.*, 569 F.2d 666, 673 (D.C.Cir.1977)), *cert. denied*, 471 U.S. 1016, 105 S.Ct. 2021, 85 L.Ed.2d 303 (1985).

■ Even assuming that Ms. Ballard's affidavit accurately established the market rate for attorneys "in the field of employment rights," Ballard Aff. ¶ 7, there has been no showing that Mr. Gontram is regularly employed in this area of the law. Nowhere in his affidavit does Mr. Gontram state that he practices in the "employment rights" field, or even the more generic "civil rights" field; nor does he aver that his general experience as a litigator, including his background as an Assistant United States Attorney, has included litigation of a type and complexity analogous to litigation in the employment rights field.[6]

#### (2)

■ Once the petitioning party fails to meet his prima facie burden of proving that

---

4. In *Blanche Road*, plaintiff's counsel sought compensation based on an hourly rate ranging from $285 to $310 per hour, depending on the year in which he had performed the work. *Blanche Road*, slip op. at 13. Defendant contended that the rate was unreasonable because "Alan Epstein, Esquire, a leading civil rights attorney in this area, has claimed and has been awarded [in a previous civil rights case] only $275 per hour." *Id.* Judge Fullam rejected defendant's "one rate fits all" theory, noting that the degree of difficulty of the proof and the exotic nature of the damage theory involved in *Blanche Road* warranted a higher hourly rate. *Id.*

5. The same reasoning applies to the affidavits of Lorrie McKinley, Esq., and Mr. Gontram's co-counsel, Mr. Zeelander. *See* Mem. in Support of Mot. for Atty's Fees and Costs, doc. no. 44, at 5–6 ("Zeelander Aff."); Pl.'s Supp. Mot. for Leave to File a Reply Mem., doc. no. 63, at Ex. 3 ("McKinley Aff."). Ms. McKinley's affidavit is set out in full in Appendix B.

The Zeelander affidavit indicates that, in 1993, he was admitted to the Bar of the Supreme Court of Pennsylvania and the Bar of the State of New Jersey. From June 1992 to the time of the signing of his affidavit, Mr. Zeelander has worked with the law firm of Ruch & Gontram, focusing

primarily in the areas of employment and civil rights litigation. He attests that his normal hourly rate for legal services is $115.

The Court fails to see in what manner the experience of Ms. McKinley is "comparable" to that of Mr. Gontram, let alone that of Mr. Zeelander. Like those of Ms. Ballard, Ms. McKinley's opinions are lacking in a factual predicate and, therefore, fail to satisfy plaintiff's burden of proof. In fact, Ms. McKinley has acknowledged that she is unable to comment on the work performed by Mr. Zeelander in this case. McKinley Aff. ¶ 10. In the exercise of its discretion, the Court will award Mr. Zeelander an hourly rate of $95.

6. The Court also notes that Mr. Gontram's request cannot be supported solely by a naked averment that "[his] normal hourly rate for legal services is $250.00." Gontram Aff. at ¶¶ 3 & 7. *See Windall*, 51 F.3d at 1185 ("The starting point in determining a reasonable hourly rate is the attorneys' usual billing rate, but this is not dispositive.") (citations omitted). To do so would constitute a "wooden application of the billing rate rule [which would] contravene[] the mandate of *Blum* as well as the policies of fee shifting statutes." *SPIRG*, 842 F.2d at 1445.

the requested rates are the prevailing rates in the community, "the district court must exercise its discretion in fixing a reasonable hourly rate." *Washington*, 89 F.3d at 1036 (quoting *Griffiths*, slip op. at 16) In the instant case, the Court considered the rate charged by Ms. Ballard and the evidence offered by defendant of the rate charged by an attorney practicing in defense counsel's law firm who possessed skill and experience comparable to that of Mr. Gontram and who had handled cases of similar complexity. The court then applied its personal knowledge of the facts and the issues in the case and of the various tasks performed by petitioning counsel.

A comparison of the skill, experience, and reputation of Ms. Ballard with those of Mr. Gontram is not helpful to plaintiff's case. As Ms. Ballard's affidavit demonstrates, she has more than twenty years of employment discrimination litigation experience. She also teaches employment discrimination at area law schools and frequently participates in presenting educational programs related to employment law. In addition, she is a member of the prestigious American Law Institute.

Mr. Gontram, on the other hand, while having displayed before the Court both skill and determination in an able representation of plaintiff, cannot claim a professional pedigree similar to that of Ms. Ballard. Given Ms. Ballard's claim that she is entitled to an hourly rate of $270 per hour, the Court finds that Mr. Gontram's request of $250 per hour is unreasonably high.

By contrast, the Court finds that the rate charged by Mary Ellen Krober, an attorney practicing in defendant's law firm best captures the prevailing market rate in this case. Ms. Krober's skill, reputation, and experience are similar to those of Mr. Gontram. She has been in practice since 1975, while Mr. Gontram has practiced since 1972. Ms. Krober also has had public service experience in the City Solicitor's Office, much like Mr. Gontram, who was affiliated with the U.S. Attorney's office. Although Ms. Krober has practiced in the field of employment litigation, she, like Mr. Gontram, does not claim to do so on a full-time basis. Finally, neither she nor Mr. Gontram, unlike Ms. Ballard, claims extensive non-litigating professional or teaching experience in the field of employment law.

Recognizing the similarity between the career profiles of Mr. Gontram and Ms. Krober, the Court accepted Ms. Krober's rate of $165 per hour as the best evidence before it of the hourly rate that Mr. Gontram could command in the open market for the services which he performed in this relatively uncomplicated litigation. This rate was then increased by the Court to $185 per hour, to reflect its view that, because plaintiff bore the burden of proof, her counsel was entitled to an equitable upward adjustment. *See* Transcript of 9/19/95 hearing, doc. no. 79, at 35–36.

### (C)

### (1)

The remaining issue is the effect, if any, of the recent Third Circuit decision in *Griffiths v. CIGNA*, Nos. 94–2090 & 94–2091 (3d Cir. Nov. 30, 1995) (unpublished), which was subsequently quoted with approval in *Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1035–37 (1996).

The Third Circuit in *Griffiths* found that the plaintiff had satisfied his prima facie burden by submitting the affidavits of three plaintiffs' civil rights attorneys, including that of Ms. Ballard, which stated that the rate requested by plaintiff's counsel "was reasonable and within the range of prevailing rates." *Griffiths*, slip op. at 15. The court then held that the defendant had failed to rebut plaintiff's submissions "both because [the defendant's] affidavits focused on the market rates of [civil rights] *defense* attorneys, not civil rights plaintiffs' attorneys, and because [the defendant] did not otherwise effectively challenge the content of plaintiff's affidavits." *Id.* The Third Circuit concluded that "[w]here, as here, the plaintiff has met his prima facie burden under the 'community market rate' lodestar test, and the opposing party has not produced contradictory evidence, the district court may not exercise its discretion to adjust the requested rate downward." *Id.*

The Third Circuit subsequently relied on *Griffiths* in its decision in *Washington*, 89 F.3d at 1035–37.[7] *Washington* involved, *inter alia*, a request by Alan Epstein, Esquire, for an hourly rate ranging from $250 to $275, depending on the year in which he performed his work as counsel for the prevailing plaintiff in an employment civil rights case. *Id.* at 1035. The district court reduced his request to $175, relying on two prior district court rulings, including that of the district court in *Griffiths v. Cigna*, No. 91–2356, 1994 WL 543501, at *2 (E.D.Pa. Oct. 6, 1994) (VanArtsdalen, J.), *vacated*, 77 F.3d 462 (3d Cir.1996), which had reduced Mr. Epstein's hourly rate to $175.[8] The Third Circuit reversed, noting that, since the reduction of hourly rates by the district court in *Washington* had been based on the decision of the district court in *Griffiths*, and since the Third Circuit had reversed and remanded the district court's rate reduction in *Griffiths*, the Third Circuit's reasoning in *Griffiths* "applies with equal strength in the [*Washington*] matter." *Washington*, 89 F.3d at 1036.

At the hearing in the instant case, defendant correctly noted that *Griffiths* is an unpublished decision that has no precedential value and that does not bind this Court. *See*

Internal Operating Procedures of the United States Court of Appeals for the Third Circuit § 5.3 ("An opinion which appears to have value only to the trial court or the parties is ordinarily not published"). Yet, in deference to the Third Circuit's subsequent reliance on *Griffiths* in *Washington*, a published opinion, the Court will not reject plaintiff's contention on that basis. *See id.* at § 5.2 ("An opinion . . . is published when it has precedential or institutional value.").

*Griffiths*, however, is distinguishable from the instant case. Moreover, even if the Court were to apply the reasoning of *Griffiths* to this case, *Griffiths* does not mandate the result suggested by plaintiff.

(2)

In the instant case, plaintiff claims that Ms. Ballard's opinion that Mr. Gontram's rate is "reasonable" satisfies her prima facie burden. She also contends that, under *Griffiths*, defendant may not challenge Ms. Ballard's conclusion, that the requested rate is in line with the community market rate, by presenting evidence of the hourly rate charged by a lawyer in the private sector

**7.** The passage of the *Griffiths* decision cited by the court in *Washington* is set forth in its entirety as follows:

As the prevailing party, Griffiths had the burden of demonstrating "the community billing rate charged by attorneys of equivalent skill and experience performing work of similar complexity." *See SPIRG*, 842 F.2d at 1450. We find that he did sustain that burden as to Mr. Epstein's requested rate of $250 per hour, by submitting the affidavits of Harold Goodman, Alice Ballard, and Lorrie McKinley, attorneys in the Philadelphia area who represent plaintiffs in civil rights litigation. These affidavits stated that Mr. Epstein's requested hourly rate of $250 was reasonable and within the range of prevailing rates charged by Philadelphia attorneys with Mr. Epstein's skill and experience. The opposition submitted by CIGNA failed to rebut plaintiff's submissions on this point, both because CIGNA's affidavits focused on the market rates of *defense* attorneys, not civil rights plaintiffs' attorneys, and because CIGNA did not otherwise effectively challenge the content of plaintiff's affidavits.

Where, as here, the plaintiff has met his prima facie burden under the "community market rate" lodestar test, and the opposing party has not produced contradictory evidence, the district court may not exercise its discre-

tion to adjust the requested rate downward. Accordingly, we will vacate the attorneys' fee award with respect to the hourly rate allowed for Mr. Epstein's services, and direct that his services be compensated at the $250 rate that plaintiff's uncontroverted proofs established.

By contrast, plaintiff did not meet his prima facie burden of proof with respect to the rates of plaintiff's other attorneys, Mr. Rapp and Ms. Abrams. Specifically, Griffiths failed to demonstrate that the requested rates were the prevailing rates in the community. In the absence of such a showing, the district court must exercise its discretion in fixing a reasonable hourly rate. This court cannot say that $100 and $85 per hour are unreasonable, and accordingly the district court's award based on these rates will be affirmed.

*Washington*, 89 F.3d at 1036; *Griffiths*, slip op. at 14–16.

**8.** The district court in *Washington* also relied on the district court's reasoning in *Oliver v. Bell Atlantic Corp.*, No. 92–751, 1994 WL 315815 (E.D.Pa. June 30, 1994) (Robreno, J.). In *Oliver*, the district court, relying in part on the district court's decision in *Griffiths*, had also reduced Mr. Epstein's requested rate from $250 to $175. *Oliver*, slip op. at *4–5.

who represents defendants in civil rights cases.

Neither *Griffiths* nor *Washington* through its reliance on *Griffiths* is applicable to this case. In *Griffiths,* the Third Circuit found that the plaintiff had met its prima facie burden of demonstrating the community market rate by his proffer of affidavits from three plaintiffs' civil rights practitioners, including that of Ms. Ballard. However, the Third Circuit neither described nor discussed the extent to which the affiants were familiar with either the issues in the case or the tasks performed by plaintiff's attorneys. Additionally, the Third Circuit did not discuss the evidence upon which the affiants based their opinions that the rates requested were "reasonable."

By contrast, the Court in this case found that *plaintiff had not made out her* prima facie case because Ms. Ballard lacked the requisite familiarity with the instant facts and issues upon which she could adequately base her opinion. Here, unlike the plaintiff in *Griffiths,* plaintiff failed to satisfy her prima facie burden.

Even assuming that plaintiff had established a prima facie case, this Court rejects plaintiff's construction of *Griffiths* as mandating a determination of the community market rate based solely on a comparison of the requested rate with the hourly rates "charged" by other attorneys who represent plaintiffs in employment civil rights cases. As the Supreme Court recognized in *Blum,* because plaintiffs' civil rights lawyers in reality do not "charge" clients for their services, there is no actual market which will determine a market rate. *Blum,* 465 U.S. at 895 n. 11, 104 S.Ct. at 1547 n. 11 ("The § 1988 fee determination is made by the court in an entirely different setting [from the usual determination of market prices by the forces of supply and demand]: there is no negotiation or even discussion with the prevailing client, as the fee—found to be reasonable by the court—is paid by the losing party."). Moreover, the Third Circuit has directed that the community market rate should be determined with reference to the rates charged by "comparable lawyers in the private business sphere." *SPIRG,* 842 F.2d at 1447; *see also* *Fine Paper,* 751 F.2d at 587 (noting that, in determining the hourly rate to be awarded plaintiff's counsel, information of the hourly rate charged by defendant's counsel "certainly was relevant and arguably even helpful").

Therefore, plaintiff's interpretation—that the Third Circuit now mandates that a district court, in determining the hourly rate for plaintiffs' employment rights practitioners, must altogether exclude from its consideration not only the market rates that lawyers charge for similar tasks in the private sector, but also the rates of opposing counsel in the very same case—is antithetical to the market principles that undergird Supreme Court and Third Circuit jurisprudence in this area. *See* supra note 2. The Court doubts that such a radical departure from established law, as has been proposed by plaintiff, would have been so casually undertaken by the Third Circuit in an unpublished decision. *See* Internal Operating Procedures of the United States Court of Appeals for the Third Circuit § 9.1 ("It is the tradition of this court that the holding of a panel in a reported opinion is binding on subsequent panels. Thus, no subsequent panel overrules the holding in a published opinion of a previous panel. Court in banc consideration is required to do so.").

A better reading of *Griffiths* is that the defendant's proofs in that case were inadequate. In *Griffiths,* the opposing party merely "submitted affidavits stating that many area attorneys charge a rate far less than [plaintiff's requested rate] for employment discrimination cases such as this one." *Griffiths,* 1994 WL 543501, at *2 (district court opinion). Therefore, it appears that the defendant failed to raise a factual issue concerning the accuracy of plaintiff's requested rate, such as by challenging the value assigned to the specific tasks performed by plaintiff's counsel. Moreover, the defendant apparently neither argued the relative complexity of the case, nor contested the affiant's knowledge either of the issues in the case or of the relevant legal market. Finally, the defendant failed to submit evidence of the rates charged by attorneys who possessed profiles similar to that of plaintiff's attorney. Thus, the teaching of *Griffiths* is simply that

the opposing party's "contradictory evidence" was wholly lacking.

### IV

For the foregoing reasons, the Court affirms its findings at the hearing on September 19, 1995. The lodestar shall be calculated by multiplying the number of hours reasonably spent on the prevailing claims by the $185 per hour rate for Mr. Gontram and the $95 per hour rate for Mr. Zeelander.

An appropriate order shall be entered.

### APPENDIX A

Ms. Ballard attests as follows:

1. I am Alice W. Ballard. I submit this affidavit in support of the Petition of Joseph Gontram, Esquire for an award of attorney's fees and costs in the captioned matter.

2. I am a 1973 graduate of Harvard Law School. I have been admitted to practice in Pennsylvania since 1975. I was admitted to practice before the U.S. District Court, Eastern District of Pennsylvania, in 1975, and before the U.S. Court of Appeals, Third Circuit, in 1978. In late 1974, I became a staff attorney at the Philadelphia office of the Lawyers' Committee for Civil Rights (which subsequently became the Public Interest Law Center of Philadelphia), where I worked until May of 1976, at which time I formed the law firm of Samuel, Ballard, and Hyman, with two partners. I am still at that firm, which is now called Samuel & Ballard, P.C.

3. From 1975 until the present time, I have focused my professional efforts almost exclusively on the litigation of claims brought by employees against their employers and/or their unions. I have handled hundreds of employment discrimination cases, many of which resulted in federal litigation. I have tried fourteen federal employment discrimination cases, including two class actions, to completion.

4. I served as an adjunct professor at Villanova Law School teaching Employment Discrimination, from 1985 through 1988. I served as a lecturer at the University of Pennsylvania Law School in the 1978–1979 academic year, teaching trial practice.

5. I served on the Third Circuit Task Force on Rule 11 in 1989, and have been a member of the Civil Justice Reform Act Advisory Committee for the Eastern District of Pennsylvania since 1991. I have served as an arbitrator and as a mediator in the Eastern District Court–Annexed Arbitration and Mediation Programs. I am a member of the American Law Institute.

6. I serve frequently as a presenter at educational programs for attorneys in the field of employment rights. During the past three years, these presentations have included the following: [here, Ms. Ballard lists 18 different presentations at which she has served from July 1992 to June 1995].

7. My hourly rate for employment rights litigation during the years 1992 through the present have been as follows:

— 1992: $210.00 per hour;

— 1993: $240.00 per hour;

— 1994: $255.00 per hour;

— 1995: $270.00 per hour.

I offer all of my clients the option of paying either at this hourly rate on a non-contingent basis, or an alternative arrangement which involves a reduced rate on a current basis, coupled with a contingent fee which permits me to recover more than the hourly rate under most circumstances.

8. In connection with my work as an activist in the local chapter of the National Employment Lawyers Association, an organization of plaintiff's employment rights lawyers, I have knowledge of the rates charged by comparable practitioners in my field, and I believe that Mr. Gontram's $250.00 per hour rate for 1995 is reasonable when judged against the rates charged by practitioners with comparable experience and skill in this field.

Ms. McKinley attests as follows:

1. I am an attorney licensed to practice law in the Commonwealth of Pennsylvania, as well as in the United States District Court for the Eastern District of Pennsylvania, the United States Court of Appeals for the Third Circuit, and the United States Supreme Court. I am employed as the Project Head of the Employment Law Project at Community Legal Services, Inc. ("CLS") which is located at 1424 Chestnut Street, Philadelphia, PA 19102.

2. I am the Chairperson of the Attorneys Fees Committee at CLS. The CLS Attorneys Fees Committee has the responsibility of setting hourly rates for CLS attorneys who are seeking court-awarded attorneys fees in CLS cases.

3. I began practicing law in 1984, having received a J.D. Degree that year from Temple University School of Law. From September, 1984 until August, 1987, I was employed as a staff attorney at CLS in the Employment Law Project, where I provided legal assistance to low-income clients with employment and other related problems. My work focused primarily upon causes of action under Title VII of the 1964 Civil Rights Act, Section 504 of the Rehabilitation Act, and the Due Process Clause of the Fourteenth Amendment.

4. From August, 1987 to May, 1992, I was a member of the faculty at the University of Pennsylvania Law School where I taught in the Civil Practice Clinic. In that capacity, I supervised dozens of law students in various types of cases, including civil rights cases, and handled numerous civil rights cases on my own.

5. In June, 1992, I returned to CLS as Project Head of the Employment Law Project. In that capacity, I represent low-income clients in numerous employment-related claims, including Title VII of the 1964 Civil Rights Act, the Americans With Disabilities Act, Section 504 of the Rehabilitation Act, and the Due Process Clause of the Fourteenth Amendment. I also represent clients in education and guardianship matters. I am a member of CLS' management committee, which has responsibility for the overall administration of the program. Finally, as Chairperson of CLS' Attorneys Fees Committee, I establish hourly rates for lawyers and support staff and coordinate the litigation and settlement of fees cases involving CLS.

6. During the past ten years I have maintained an active litigation practice in both the Pennsylvania trial and appellate courts and the federal trial and appellate courts. Some of the cases in which I have acted as lead counsel or co-counsel include the following: [list of 13 cases].

7. I have made many presentations to legal audiences pertaining to various civil rights issues, including at least four on attorneys fees in civil rights litigation.

8. I am currently litigating six consolidated appeals in the Third Circuit Court of Appeals involving statutory attorneys fees under 42 U.S.C. § 1988.

9. Because of my active civil rights and attorneys [sic] fees practice, I am familiar with market rates for civil rights attorneys in the Philadelphia area.

10. Based upon my experience, and my familiarity with the hourly rates charged in the Philadelphia legal community by civil rights practitioners, I would consider an hourly rate of $110.00—$120.00 per hour to be reasonable in light of prevailing market realities, for a lawyer with two years of experience, depending on the quality of work performed. I am not in a position to comment on the work performed by Mr. Zeelander in this case. All of the second year lawyers at Community Legal Services, Inc. presently have an hourly rate within this range.

11. I would also consider an hourly rate of $250.00 to be reasonable and well within the prevailing market for an attorney with more [sic] twenty years of litigation experience as attested by Mr. Gontram.

### ORDER

**AND NOW,** this 9th day of August, 1996, for the reasons set forth in the accompanying memorandum, it is **ORDERED** that Plaintiff's Supplemental Motion for Attorney's Fees (doc. nos. 76 & 77) is **GRANTED IN PART and DENIED IN PART.** Plaintiff shall be awarded $4,564.40 in attorneys' fees and $118.12 in costs, for a total of $4,682.52. *See* attached appendix.

It is **FURTHER ORDERED** that Plaintiff's Motion for Application of Prejudgment Interest on the Award of Attorney's Fees and Costs (doc. no. 78) is **DENIED.**[1]

**AND IT IS SO ORDERED.**

## APPENDIX

**Plaintiff seeks $15,015.12 in attorney's fees and costs:**

| | | |
|---|---|---|
| Gontram @ $250/hr × 30.7 hours | | $ 7,675.00 |
| Zeelander @ $115/hr × 62.8 hours | | 7,222.00 |
| Westlaw costs | | 118.12 |
| Total | . | $15,015.12 |

**Calculations for Mr. Gontram:**

| | | |
|---|---|---|
| hours billed: | 30.7 | |
| time reductions: | − 4 | (opp'n to prot. order) |
| | − 1 | (opp'n to quash motion) [1] |
| | − 8.75 | (50% × 17.5 hours billed on reply to D's opp'n) [2] |
| total hours: | 16.95 hours | |
| rate: | × $ 185 /hour | |
| lodestar: | $3,135.75 | |
| 20% reduction: | × 0.80 | |
| award: | $2,508.60 | |

**Calculations for Mr. Zeelander:**

| | | |
|---|---|---|
| hours billed: | 62.8 | |
| time reductions: | − 17 | (opp'n to quash motion) |
| | − 18.75 | ·(50% × 37.5 hours billed on reply to def.'s opp'n) |
| total hours: | 27.05 hours | |
| rate: | × $ 95 /hour | |
| lodestar: | $2,569.75 | |
| 20% reduction: | × 0.80 | |
| award: | $2,055.80 | |

**TOTAL AWARD:**

| | |
|---|---|
| Gontram— | $ 2508.60 |
| Zeelander— | + 2055.80 |
| Westlaw costs— | + 118.12 |
| | $ 4682.52 |

1. Plaintiff's motion for attorneys' fees (doc. no. 44) was fully litigated at the hearing on September 19, 1995. As a result of that proceeding, the Court granted plaintiff $22,207.20 in attorneys' fees. *See* Order of September 19, 1995, doc. no. 75. Because plaintiff never requested prejudgment interest on those fees at that hearing, the Court finds that the issue was **waived.**

1. The Court did not reduce plaintiff's claimed number of hours for the work performed on the motion to compel Derewicz to comply with the Court's Order of July 21, 1995 (doc. no. 69). Although the motion was denied as moot, *see* Order of August 29, 1995, doc. no. 70, plaintiff could be viewed as the prevailing party on that motion: Derewicz was to comply with the Court's Order within seven days and failed to do so; plaintiff filed the motion on August 24, 1995; and ultimately, Derewicz turned over the information, which mooted the motion.

2. Defendant claims to have billed only 17.8 hours in drafting its opposition memorandum; plaintiff's billing was three times that amount (55 hours). The Court recognizes, however, that plaintiff's reply memorandum (doc. no. 63) was substantially lengthier than defendant's memorandum and contained a fuller discussion. Although the Court has halved the total number of hours billed, plaintiff has nevertheless been compensated approximately one-third more for time spent on the reply brief (27.5 hours) than defendant.