William **BECKER**, Plaintiff,

v.

**ARCO CHEMICAL COMPANY,**
**Defendant.**

No. CIV. A. 95–7191.

United States District Court,
E.D. Pennsylvania.

July 22, 1998.

Amended Order Aug. 4, 1998.

George P. Wood, Stewart Wood & Branca, Carmen R. Matos, Stewart, Wood & Branca, Norristown, PA, for Plaintiff.

Maureen M. Rayborn, Daniel V. Johns, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, PA, for Defendant.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

This is an age discrimination case. After an eleven-day trial, the jury awarded plaintiff $736,000 in damages. Presently before the Court are plaintiff counsel's petition for $562,421.25 in attorney's fees and $36,613.95 in costs, and plaintiff's motion to mold the verdict to include post-trial interest, and pre-trial interest on the back pay award, and to reflect tax consequences suffered by plaintiff. Defendant opposes the petition for attorney's fees and costs as excessive, and objects to the Court molding the verdict. For the reasons which follow, the Court will grant counsel attorney's fees in the reduced amount of $313,125.70, costs in the reduced amount of $26,738.84, and will mold the verdict to include pre-trial interest on the back pay award. The Court also grants the plaintiff post-trial interest on the entire verdict.

## I. BACKGROUND

The plaintiff, William P. Becker ("Becker") sued his former employer, ARCO, for age discrimination in connection with his discharge from employment. Specifically, Becker alleged in a three-count complaint that the conduct of ARCO employees violated the Age Discrimination in Employment Act ("ADEA") and the Pennsylvania Human Relations Act ("PHRA"), and constituted intentional infliction of emotional distress. The Court granted summary judgment in favor of ARCO on the claim for intentional infliction of emotional distress. The remaining claims under the ADEA and the PHRA proceeded to trial.

At the conclusion of an eleven-day jury trial, at which twenty-one witnesses testified, the jury returned a verdict in favor of plaintiff. Becker was awarded $186,095 in back pay damages, $380,000 in front pay damages, and $170,000 in compensatory damages. The jury declined to award punitive or liquidated damages. In accordance with the verdict, the Court entered judgment in favor of plaintiff in the amount of $736,095 on November 3, 1998.

Following the conclusion of trial, plaintiff's counsel ("counsel") filed a petition for $562,421.25 in attorney's fees and $36,613.95 in costs. The $562,421.25 in attorney's fees is comprised of $434,500 in attorney's fees related to litigation, a 20% fee enhancement amounting to $86,900, $24,996.25 in overtime, and $16,025 in fees relating to the preparation of the fee petition.

## II. PETITION FOR ATTORNEY'S FEES

### A. *The ADEA*

A plaintiff who has prevailed on the merits of his ADEA claim is entitled to an award of attorney's fees pursuant to 29 U.S.C. § 626(b). *See Blum v. Witco Chem. Corp.*, 829 F.2d 367, 377 (3d Cir.1987). "The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b) (1965 & Supp.1998) (as incorporated by 29 U.S.C. § 626(b)).

"The ADEA prohibits age discrimination in employment against any person over age forty. Because the prohibition against age discrimination contained in the ADEA is similar in text, tone, and purpose to that contained in Title VII, courts routinely look to law developed under Title VII to guide an inquiry under the ADEA." *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 330 (3d Cir.1995) (citations omitted). The Third Circuit has noted that "[s]ince [42 U.S.C.] § 1988 is similar in purpose and design to § 706(k) of Title VII [which provides for recovery of attorney's fees and costs], cases interpreting § 1988 can be applied to § 706(k) as well." *Sullivan v. Commonwealth of Pa. Dep't of Labor and Indus., Bureau of Vocational Rehabilitation,* 663 F.2d 443, 447 n. 5 (3d Cir.1981) (citations omitted).

Because the principles of Title VII jurisprudence would apply in deciding substantive issues in ADEA cases, the same principles should also apply in determining the reasonableness of attorney's fees and costs. The Court therefore finds that cases interpreting 42 U.S.C. § 1988 can be applied to 29 U.S.C. § 626(b) as well.

B. *Loadstar Method*

 The calculus in determining the amount of attorney's fees a prevailing party is entitled to receive in a civil rights action is well-settled. "The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation [by] a reasonable hourly rate." *Blum v. Stenson,* 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40(1983)). This estimate is called the "lodestar." *Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir.1990). Procedurally,

> [t]he party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable. To meet its burden, the fee petitioner must submit evidence supporting the hours worked and rates claimed. In a statutory fee case, the party opposing the fee award then has the burden to challenge by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the requested fee. The district court cannot decrease a fee award based on factors not raised at all by the adverse party. Once the adverse party raises objections to the fee request, the district court has a great deal of discretion to adjust the fee award in light of those objections.

*Id.* (internal citations and quotations omitted). Even after calculating the lodestar, "[h]owever, the district court has the discretion to make certain adjustments to the lodestar," if the party opposing the fee petition has met its "burden of proving that an adjustment is necessary." *Id.* (citations omitted). Thus, a court makes two reasonableness determinations: the hourly rate and the number of hours expended by the attorneys.

C. *Reasonableness of the Hourly Rate*

1. *Community Market Rate*

The Supreme Court has held that the reasonable hourly rates applicable to the labors of attorneys for a prevailing party should be "the prevailing market rate[ ] in the relevant community." *Blum v. Stenson,* 465 U.S. at 895, 104 S.Ct. 1541. Yet, the Supreme Court also cautioned that:

[m]arket prices of commodities and most services are determined by supply and demand. In this traditional sense there is no such thing as a prevailing market rate for the service of lawyers in a particular community. The type of services rendered by lawyers, as well as their experience, skill and reputation, varies extensively—even within a law firm. Accordingly, the hourly rates of lawyers in private practice also vary widely. The fees charged often are based on the product of hours devoted to the representation multiplied by the lawyer's customary rate. But the fee usually is discussed with the client, may be negotiated, and it is the client who pays whether he wins or loses. The § 1988 fee determination is made by the court in an entirely different setting: there is no negotiation or even discussion with the prevailing client, as the fee—found to be reasonable by the court—is paid by the losing party. Nevertheless, as shown in the text above, the critical inquiry in determining reasonableness is now generally recognized as the appropriate hourly rate. And the rates charged in private representations may afford relevant comparisons.

In seeking some basis for a standard, courts properly have required prevailing attorneys to justify the reasonableness of the requested rate or rates. To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. A rate determined in this way is normally deemed to be reasonable, and is referred to—for convenience—as the prevailing market rate.

*Id.* at 895 n. 11, 104 S.Ct. 1541. Thus, the Supreme Court recognized the "inherent difficulty" in determining a "market rate" for legal services when, in reality, there exists no "market" in the conventional sense of "economic activity in which buyers and sellers come together and the forces of supply and demand affect prices." Webster's Ninth

New Collegiate Dictionary 728 (1988). *See* Paul A. Samuelson, *Economics* 53 (1980) ("[T]he market price reaches its competitive equilibrium ... where the forces of demand and supply are just in balance.").

In this circuit, the leading authority for determining the prevailing "market rate" is *Student Pub. Interest Research Group of New Jersey, Inc. v. AT & T Bell Labs.*, 842 F.2d 1436 (3d Cir.1988) [hereinafter *SPIRG* ]. In *SPIRG* the hourly rate charged by a law firm that handled only public interest cases was lower than the rate commanded by "conventional firms performing work of equivalent complexity." *Id.* at 1438. The Third Circuit held that "the community billing rate charged by attorneys of equivalent skill and experience performing work of similar complexity, rather than the firm's billing rate, is the appropriate hourly rate for computing the lodestar." *Id.* at 1450. To determine the "community market rate," the Third Circuit directed courts "to assess the experience and skill of the attorneys and compare their rates to those of comparable lawyers in the *private* business sphere." *Id.* at 1447 (emphasis added); *see also Rode*, 892 F.2d at 1183 ("Thus, the court should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.") (citing *Blum v. Stenson*, 465 U.S. at 895 n. 11, 104 S.Ct. 1541; *SPIRG*, 842 F.2d at 1447).

█ The prevailing party has the initial burden of demonstrating that the requested rate is the community market rate. *Rode*, 892 F.2d at 1183; *SPIRG*, 842 F.2d at 1450. While "[t]he starting point in determining a reasonable hourly rate is the attorneys' usual billing rate, 'proof of the attorney self-designated billing rate is not dispositive.' " *Public Interest Research Group of New Jersey, Inc. v. Windall*, 51 F.3d 1179, 1185 (3d Cir.1995) (citations omitted). The prevailing party's burden may be satisfied by the submission of affidavits of attorneys with personal knowledge of the hourly rates customarily charged in the relevant market. *See, e.g., Washing-*

*ton v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031, 1036 (3d Cir.1996).

█ If the prima facie burden has not been satisfied, the Court exercises its discretion in determining a reasonable hourly rate. *Washington*, 89 F.3d at 1036; *Rode*, 892 F.2d at 1183. In doing so, the Court considers the evidence before it and may draw upon its personal knowledge of the facts and issues in the litigation. *See Bell v. United Princeton Properties, Inc.*, 884 F.2d 713, 720 (3d Cir. 1989) ("[T]he district court ... may only serve as fact witness when the facts at issue are wholly within its personal knowledge.").

█ If the prevailing party meets its burden, however, the opposing party must produce affidavits or other submissions which create an issue as to the reasonableness or accuracy of the fee petition. *See id.* ("We see no reason to require that parties objecting to the fee request submit affidavits so long as answers or briefs, if sufficiently specific, can serve the same function of putting the applicant on notice that it must defend its fee petition."). If the prevailing party satisfies its prima facie burden and no opposition to the prima facie case is offered, the requested rate is the community market rate at which the petitioning attorney may be compensated. *See id.* ("[A] court may not sua sponte reduce the amount of the award when the defendant has not specifically taken issue with the amount of time spent or the billing rate, either by filing affidavits, or, in most cases, by raising arguments with specificity and clarity in briefs (or answering motion papers).") (clarifying *Cunningham v. City of McKeesport*, 753 F.2d 262, 265–66 (3d Cir. 1985), *vacated on other grounds*, 478 U.S. 1015, 106 S.Ct. 3324, 92 L.Ed.2d 731 (1986)). If, on the other hand, the prima facie case is not satisfied or if it is satisfied but defendant successfully challenges plaintiff's proffer, the determination of the appropriate market rate is vested within the discretion of the district court. *Rode*, 892 F.2d at 1183.

2. *Plaintiff has failed to prove a prima facie case*

█ In this case, counsel request a fee of $250 per hour for Mr. Wood and Mrs. Matos, the two attorneys working on the case. In

support of their request, counsel have submitted the affidavits of Mr. John McAleese, Jr.; Ms. Alice Ballard, Esq.; and Mr. John H. Widman. (Pet.'s Mem. Ex. D, E & F.) Defendant argues that counsel have not provided the Court with a basis for concluding that the $250 per hour rate requested is reasonable because the affidavits submitted by counsel fail to establish that the $250.00 rate requested is the rate counsel actually charge non-contingent fee clients or that the $250 rate is the prevailing market rate. After reviewing the affidavits offered by counsel, as well as arguments made in the briefs, the Court agrees that counsel have not carried their burden of establishing that the requested hourly rates of compensation for both Mr. Wood and Mrs. Matos are reasonable in light of the prevailing market rate.

First, the affidavits submitted are insufficient because in arriving at a reasonable hourly rate, the affiants failed to take into account the differences among types of civil rights cases. " 'Civil rights cases' vary greatly in nature, and in complexity." *Tobin v. The Haverford School,* 936 F.Supp. 284 (E.D.Pa.1996), *aff'd* 118 F.3d 1578 (3d Cir.1997)(table)(quoting *Blanche Road Corp. v. Bensalem Township,* 1996 WL 368347 *6 (E.D.Pa. June 25, 1996)). They range from the prosecution of complex class actions to a demand that a leaky toilet be fixed in the home of a single public housing tenant. Therefore, a "one rate fits all" theory does not apply. *Blanche Road,* 1996 WL 368347 at *6. Here, the affidavits failed to point to the nature of the proof in this case (other than the number of witnesses and trial days), or identify the novelty of the law applied, or the complex nature of the damages theory, which merits compensating counsel, for this otherwise ordinary case, at the very top of the range for civil rights cases.[1]

Second, affiants failed to assign different rates to different tasks, or at least derive a "blended" rate, depending upon the complexity of the task performed by counsel. *Tobin,* 936 F.Supp. at 290; *see Carpenter Technology Corp. v. Armco, Inc.,* 808 F.Supp. 408, 412 (E.D.Pa.1992)("routine work can and should be directed to low level attorneys"), *aff'd,* 993 F.2d 876 (3d Cir.1993)(Table). Specifically, in Exhibit C to its memorandum, ARCO lists entries totaling approximately 426 hours which normally would be performed by junior level associates (such as document review or legal research) or paralegals and clerical staff (such as faxing and labeling of exhibits). *See Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161, 167 (3d Cir.1973) ("[T]he court may find that the reasonable rate of compensation [for an attorney] differs for different activities."); *See also Delaware Valley Citizens' Council for Clean Air v. Commonwealth of Pa.,* 762 F.2d 272, 279 (3d Cir.1985)(awarding counsel fees at paralegal rates for "mundane or minor" work), *rev'd on other grounds,* 483 U.S. 711, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987); *In re Fine Paper Antitrust Litig.,* 751 F.2d 562, 591–93 (3d Cir.1984) (awarding associates' rates for tasks performed by partners but which were typically performed by associates or paralegals). In other words, as stated by the Third Circuit, "[a] Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn." *Ursic v. Bethlehem Mines,* 719 F.2d 670, 677 (3d Cir.1983). In this case, the Court concludes that in depicting the work performed by counsel in general terms, without sensitivity to the nature of the task performed, affiants painted with too broad a brush.

Third, conclusory statement attesting to each affiant's belief that $250.00 is a "reason-

---

1. Mr. McAleese stated that "[t]he issues in the *Becker v. ARCO* case were difficult to litigate, in my opinion, because of the numerous subjective defenses asserted by ARCO Chemical, and again because of the numerous witnesses that testified at trial, and the large volume of documents involved." (Pet. Mem. at Ex.C). Mr. McAleese does not state that he reviewed the file, nor does he identify which of the defenses offered by the defendant were particularly challenging or difficult to defend against. The other affiants, Ms. Ballard and Mr. Widman, did refer in general

terms to having reviewed the work performed by counsel in this case and the summary judgment papers. Both Ms. Ballard and Mr. Widman, in nearly identical language, recite that the cases involved eleven days of trial, numerous witnesses and a large number of exhibits. Neither, however, related the need for a large number of witnesses or documentary proofs due to any of the theories of liability or damages, nor did they discuss why length of trial alone bespeaks of complexity.

able" rate is not sufficient to satisfy counsel's burden. The issue is not whether the affiants believe the hourly rates requested by counsel to be "reasonable," based upon a subjective determination of the value of the services. Rather, the inquiry is whether the hourly rate requested reflects the "community market rate" attorneys of comparable skill, experience and reputation are paid by actual clients for providing services in cases of similar complexity. *SPIRG*, 842 F.2d at 1447–1450. In other words, the task is not to allocate some intrinsic value for the services provided. Instead, the Court must approximate by analogy the value the type of legal services rendered by counsel in this case would have commanded in the open market. *See Matter of Continental Illinois Securities v. Continental Illinois Corp.*, 962 F.2d 566, 568 (7th Cir.1992)("Markets know market values better than judges do.")(cited with approval in *In re Busy Beaver Bldg. Centers, Inc.*, 19 F.3d 833, 854 (3d Cir.1994)). Conclu-

sory statements, devoid of factual underpinnings, no matter how distinguished the pedigree of the affiant, are insufficient to satisfy the applicant's burden to show that "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." [2] *Blum v. Stenson*, 465 U.S. at 896 n. 11, 104 S.Ct. 1541. A fortiori, an hourly rate is a reasonable one only if it is the prevailing market rate.[3]

### 3. Establishing a Reasonable Hourly Rate

Once it is determined that the requesting party has failed to establish a prima facie case, the Court must exercise its discretion in fixing a reasonable hourly rate. *Washington*, 89 F.3d at 1036 (quoting *Griffiths v. Cigna*, Nos. 94–2090 & 9402091, 1996 WL 60486 (3d Cir. Nov. 30, 1995)(unpublished)). The task is to arrive at an informed estimate of the hourly rate the market would

---

**2.** The affiants are in essence experts upon whom the Court relies in determining a reasonable hourly rate. As experts, their opinions must be based on "knowledge" rather than "subjective belief or unsupported speculation." *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 742 (3d Cir.1994); Fed.R.Evid. 703 ("The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing."); *see also Hines v. Consolidated Rail Corp.*, 926 F.2d 262, 271 (3d Cir.1991) ("[The medical expert's] intensive and personal investigation of [plaintiff] distinguishes [the expert's] testimony from the testimony excluded by courts in a number of cases cited by [defendant] where there was no evidence in the record that experts ever examined or tested the plaintiff (or assertions) at issue."); *Pennsylvania Dental Ass'n v. Medical Serv. Ass'n of Pennsylvania*, 745 F.2d 248, 262 (3d Cir.1984) ("[T]he factual predicate of an expert's opinion must find some support in the record.") (citing with approval *Merit Motors, Inc. v. Chrysler Corp.*, 569 F.2d 666, 673 (D.C.Cir.1977)). In this case, the affiants have failed to demonstrate that they are speaking from actual knowledge of the rates charged in private representations. *Blum v. Stenson*, 465 U.S. at 895 n. 11, 104 S.Ct. 1541; *SPIRG*, 842 F.2d at 1447.

**3.** The Court notes that this case is distinguishable from *Griffiths v. Cigna*, Nos. 94–2090 & 9402091, 1996 WL 60486 (3d Cir. Jan. 30, 1995)(unpublished)(cited in *Washington v. Philadelphia Coun-*

*ty Court of Common Pleas*, 89 F.3d 1031 (3d Cir.1996)). In *Griffiths*, the Third Circuit found that the prevailing party had met his prima facie burden under the community market rate "lodestar" test by submitting the affidavits of three lawyers who represented plaintiffs in civil rights litigation, and who attested that the requested rate was reasonable and within the range of prevailing rates charged by attorneys of comparable skills to those of counsel in that case. *Washington*, 89 F.3d at 1036 (citing *Griffiths*, slip op. at 14–16, 1996 WL 60486). The Third Circuit also found that the defendant had failed to rebut plaintiff's prima facie case because defendant had "focused" on the market rates of defense counsel rather than civil rights plaintiff's attorneys. *Id.*

Notably, in *Griffiths*, the Third Circuit did not discuss the extent to which the affiants were familiar with the issues in the case or the tasks performed by counsel, nor did the *Griffiths* opinion discuss the relative complexity of the case or the evidence upon which the affiants based their opinion that the rates requested were reasonable. *Tobin*, 936 F.Supp. at 293. In other words, the focus of the *Griffiths* opinion was the defendant's attempt to rebut the plaintiff's prima facie case, rather than the prima facie case itself, and the conclusion was that the defendant's "contradictory evidence" was insufficient to challenge the plaintiff's proofs. In contrast, the case at hand has as its focus counsel's failure to meet their prima facie burden. Because counsel have failed to clear this first hurdle, the reasoning of *Griffiths* regarding the sufficiency of rebuttal evidence is inapplicable.

have fixed for the case. *See e.g., Smith v. International Services, Inc.,* 1997 WL 667872 (E.D.Pa. Oct.9, 1997); *Tobin,* 936 F.Supp. at 284. In this case, the Court's discretion is informed by: (1) the skill, experience and reputation of petitioning counsel; (2) the relative complexity of the case; and (3) the presiding judge's knowledge of the facts and issues of the case and of the performance of counsel.

#### a. *Skill, experience and reputation*

The calibration of skill, experience and reputation into an actual "hourly rate" is not subject to mathematical exactitude. Rather, it involves the careful application of qualitative judgment to a particular fact situation. For example, in one case, a self-described, "highly experienced and skillful civil rights lawyer" was awarded $205 as an hourly rate. *Burks v. City of Philadelphia,* 974 F.Supp. 475, 479 n. 7 (E.D.Pa.1997)(Bechtle, J.). In another, a lawyer with "seventeen years (experience) in the areas of disability, workers' compensation and employment discrimination" was awarded $225 per hour. *Valentin v. Crozer–Chester Medical Center,* 1998 WL 32665 (E.D.Pa.1998)(Shapiro, J.). Similar illustrations suggest that generally attorneys representing plaintiffs in civil rights cases are awarded an hourly rate of between $150 to $250, depending on their level of experience.[4] The next question is where Mr. Wood and Mrs. Matos fit within this range.

The Court notes that Mr. Wood has been in practice for 24 years working principally in the Montgomery County/Philadelphia area. His current practice appears to have significant emphasis on employment law. Mr. Wood, however, did not cite to any significant results in employment litigation in which he has been involved. On the other hand, Mrs. Matos graduated from law school 18 years ago. Her experience, until November 1995, was in government service as an attorney for the Equal Employment Opportunity Commission. Mrs. Matos has been involved in a number of significant employment cases. On balance, therefore, while Mr. Wood has greater general experience, Mrs. Matos's experience is concentrated in the employment field. Moreover, while Mrs. Matos took the lead role and acted as "first chair" at trial and at pretrial proceedings, Mr. Wood was clearly the "senior person" on the team, who directed overall strategy and supervised Mrs. Matos. Based on these credentials, Mr. Wood and Mrs. Matos are entitled to compensation towards the middle to the upper end of the hourly rate range approved by other courts in this district.

#### b. *Complexity of the Case*

Similarly, the assessment of the relative complexity of a case and its corollary, counsel's performance, also call for the application of the Court's qualitative judgment. At the high end, one court approved an hourly rate of $275 in a case where experienced counsel successfully litigated a substantive due process violation involving "esoteric damage theories." *Blanche Road,* 1996 WL 368347. Also, at the high end, the Third Circuit approved an hourly fee of $250 for experienced counsel in a complex case involving the development of new law on the element of causation. *Griffiths,* 1994 WL 543501 (E.D.Pa. Oct. 6, 1994)(VanArtsdalen, J.), *vacated,* 77 F.3d 462 (3d Cir.1996)(table). At the other end, courts have approved fees of as low as $150 per hour for experienced counsel where counsel was involved in a relatively simple landlord-tenant dispute. *Jenkins v. Philadelphia Housing Authority,* 1995 WL 105479 (E.D.Pa. Mar.10, 1995) (Kelly, J.)(approving $150.00 per hour fee for experienced community legal services attorney), *aff'd* 79 F.3d 1139 (3d Cir.1996)(Table).

---

4. For other examples, see *Tobin,* 936 F.Supp. at 292 (lawyer with twenty years at the Bar, but with relatively little experience in employment cases, was found to command $165 in the marketplace); *Churchill v. Star Enterprises,* 1998 WL 254080 (E.D.Pa. Apr.17, 1998)(partner awarded $250 hourly rate and second-year associate granted $100 hourly rate in a Family and Medical Leave Act action); *Smith,* 1997 WL 667872(lawyer with seven years experience in "complex litigation" but with relatively little experience in employment law, awarded $150 to $160); *Haynes v. Logan Assistance Corp.,* 1994 WL 66701 (E.D.Pa. March 4, 1994)(awarding $250 hourly rate to partner and $140 to associate in civil rights action upon concession of the defendants).

Complexity, however, cannot be determined from the face of the pleadings alone. Rather, counsel's creativity and legal agility may also be evaluated by examining the difficulty counsel faced in establishing the proof and in meeting the litigation strategy of the defendants. The Court recognizes that, while this case was uncomplicated on its face, upon closer examination, it demanded a greater degree of skill on the part of both counsel than it appeared to warrant at first glance. First, because the plaintiff's work history extended back twenty three years and the plaintiff had received generally acceptable evaluations and raises during his career except in the year of his termination, it became necessary for counsel to explore in detail during discovery (and at some length at the trial) the reason, indeed the pretext, that caused this apparently sudden change in plaintiff's employment fortunes. Second, throughout the litigation, the defendant displayed an implacable and combative posture. This "take no prisoners" strategy imposed on plaintiff's counsel significant hurdles throughout the litigation. Viewed in this light, the Court concludes that, while no foul blows were landed, the defendant's hard blows put the plaintiff squarely to his proof. Under these circumstances, the Court places the case also near the middle of the range for hourly fees awarded based on complexity.

### c. Blended rates

In setting a reasonable hourly rate, the Court may also examine whether a less senior attorney could have performed the same work performed by counsel in this case in a competent manner. Jenkins, 1995 WL 105479 *1 (citing Jackson v. Philadelphia Housing Authority, 858 F.Supp. 464 (E.D.Pa.1994)). In this case, as was pointed out by defendant, counsel performed a number of tasks which normally would be performed by junior level associates or paralegals and clerical staff. In fact, Exhibit C to defendant's memorandum lists entries totaling approximately 426 hours for tasks such as document review, legal research, faxing, and labeling of exhibits, all of which normally would be performed by junior level associates or clerical staff. The Court concludes that the nature of these tasks must impact

upon the hourly rate charged by counsel. See Lindy Bros. Builders, 487 F.2d at 167 ("[T]he court may find that the reasonable rate of compensation [for an attorney] differs for different activities."); See also Delaware Valley Citizens' Council for Clean Air, 762 F.2d at 279 (awarding counsel fees at paralegal rates for "mundane or minor" work); In re Fine Paper Antitrust Litig., 751 F.2d at 591–93 (awarding associates' rates for tasks performed by partners but which were typically performed by associates or paralegals); Ursic, 719 F.2d at 677 ("[a] Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn."). However, rather than assign an appropriate hourly rate on a task-by-task basis, the Court will consider these tasks, together with the other factors discussed above, to arrive at a "blended rate" which will take into account the varying nature of the tasks performed by counsel.

### d. Conclusion

In summary, juxtaposing the relative complexity of this case with the skill, experience and reputation of counsel, and taking into account whether the tasks performed by counsel could have been performed in a competent manner by a less senior attorney, and in light of other awards made in this district, and the performance of counsel in bringing about a successful conclusion to this litigation, the Court concludes that Mr. Wood is entitled to $215 and Mrs. Matos to $195, respectively, as their hourly rates.

### 4. Overtime

In addition, the Court will deny counsel's request for overtime. Counsel have not cited any authority to support the proposition that attorneys in civil rights cases are entitled to overtime pay. By analogy to the Fair Labor Standards Act ("FLSA"), the federal statute which requires payment of overtime to certain employees, counsel are not entitled to overtime pay. Under the FLSA, attorneys providing professional services to clients would be considered exempt employees, and therefore, not subject to the overtime provisions of the FLSA. Even assuming that lawyers in civil rights cases were entitled to be paid over-

time, the Court concludes that counsel have failed to show that overtime rates requested are reasonable, i.e., are part of the prevailing rate. *See Hensley,* 461 U.S. at 434, 103 S.Ct. 1933. For these reasons, the Court denies counsel's request for $25,000 in overtime pay.

D. *Reasonableness of the Hours Expended*

■ District courts are required to exclude from compensation hours which are not reasonably expended. *Hensley,* 461 U.S. at 433, 103 S.Ct. 1933. "Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary." *Id.* Based on the objections asserted by the defendant, the Court concludes that the following hours are excessive, redundant and/or partially unnecessary, and therefore, will reduce them by 50%:

(1) 34 hours spent by Mr. Wood reviewing Mrs. Matos' work, *see Rode,* 892 F.2d at 1187 (reduction for duplication warranted where two attorneys are unreasonably doing the same work). Given, Mrs. Matos's request for compensation at a high hourly rate, it is unreasonable to bill both Mrs. Matos' time and that of a senior supervisor at the same rate and for the same number of hours.

(2) 5 hours spent by Mr. Wood at Dr. Ramey's deposition, *see Schofield v. Trustees of Univ. of Pennsylvania,* 919 F.Supp. 821, 828 (E.D.Pa.1996)(finding attendance of two attorneys at a deposition to be unnecessary and excessive). While there may be a need for two lawyers to attend a deposition, that need has not been shown here.

(3) 64.1 hours spent by Mr. Wood which duplicated Mrs. Matos' effort with regard to research, drafting documents, document review, meetings with clients and telephone calls, (as summarized in Def's Mem. Ex. B), *see Rode,* 892 F.2d at 1187. *See also* supra ¶ 1.

(4) 38.87 unexplained hours spent by Mrs. Matos in "receiving" documents which was separate and apart from "reviewing" those documents, (as summarized in Def. Mem. at Ex. C).

In summary, 51.55 hours shall be subtracted from Mr. Wood's 465.90 hours, and 19.44 hours shall be excluded from Mrs. Matos's 1272.23 hours. This results in 414.35 hours and 1252.8 hours compensable for Mr. Wood and Mrs. Matos respectively.

■ In addition, ARCO contends the time spent on the following tasks was excessive and unnecessary: (1) 183.27 hours spent on research; (2) 142.17 hours reviewing documents; (3) 127.5 hours spent on a response to defendant's summary judgment motion; (3) 23.5 hours spent answering defendant's single set of interrogatories; (4) 23.1 hours spent on a motion to compel; (5) 38.5 hours spent on the pre-trial memo; and (6) 18.8 hours spent on "bargaining unit" issue. ARCO also questions the accuracy of the records by pointing by way of example to entries which indicate that Mr. Wood worked 25.9 hours in a single day. In light of ARCO's objections, the Court has wide discretion to adjust the fee that is requested. *See Rode,* 892 F.2d at 1183. Furthermore, ARCO "need only specify with particularity the reason for its challenge and the category (or categories) of work being challenged; it need not point to each individual excessive entry." *Bell,* 884 F.2d at 721.

In this case, considering the wealth of experience of plaintiff's attorneys, the Court agrees that the entries pointed to by ARCO are excessive. *See Rainey,* 832 F.Supp. at 127 ("the higher the allowed hourly rate commanded based on skill and experience, the shorter time it should require an attorney to perform a particular task"). The case in question did not present novel issues of law that would require an experienced practitioner to expend an extensive amount of time researching legal issues or drafting documents, such as a summary judgment response or a pretrial memorandum. In addition, the time expended by plaintiff's counsel on answering interrogatories and drafting a motion to compel seems extraordinary in light of their years of experience.

Having determined that the hours requested are unreasonable, the Court is left to determine how the hours should be reduced, a determination requiring a certain amount of "judgment calling," *Bell,* 884 F.2d at 721,

and evading mathematical certitude, *see Lindy Bros. Bldrs., Inc. v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102, 116 (3d Cir.1976) (en banc) ("We find it necessary also to observe that we did not and do not intend that a district court, in setting an attorneys' fee, become enmeshed in a meticulous analysis of every detailed facet of the professional representation.... Once the district court determines the reasonable hourly rates to be applied, for example, it need not conduct a minute evaluation of each phase or category of counsel's work."); *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 720 (5th Cir.1974) (noting that the process of establishing a reasonable fee is not one of mathematical precision). The Court concludes that the balance of each attorney's hours will be reduced by 10% to compensate for the excessive time spent on the aforementioned tasks.

Multiplying Mr. Wood's remaining 372.92 [5] hours by a reasonable hourly rate of $215.00 results in a loadstar of $80,177.80. Applying Mrs. Matos's remaining 1,127.52 [6] hours by a reasonable hourly rate of $195 results in a loadstar of $219,866.40. Thus, the combined loadstar is $300,044.20.

### E. *Adjusting the Loadstar*

■ Once, the court determines the lodestar, it is presumed to be the reasonable fee. *Rode,* 892 F.2d at 1183 (citing *Blum v. Stenson,* 465 U.S. at 897, 104 S.Ct. 1541). "However, the district court has the discretion to make certain adjustments to the lodestar." *Id.*

### 1. *Downward Adjustments*

■ ARCO claims that the lodestar should be adjusted downward because one of plaintiff's three claims, i.e., intentional infliction of emotional distress, was dismissed on summary judgment. It is true that the Court can disallow fees for time spent by attorneys on claims which were unsuccessful and that are "distinct in all respects from claims on which the party did succeed." *Washington,* 89 F.3d at 1044 (quoting *Insti-*

*tutionalized Juveniles v. Secretary of Public Welfare,* 758 F.2d 897, 919 (3d Cir.1985)). "However, where claims are factually or legally related, it is difficult to determine which portion of the time spent by counsel bears upon which claim." *Rainey,* 832 F.Supp. at 131. Here, because the intentional infliction of emotional distress claim was factually and legally related to the plaintiff's claim for emotional distress damages under the PHRA, the claim was not "distinct in all respects from claims on which the party did succeed." *Washington,* 89 F.3d at 1044. Therefore, although plaintiff did not prevail on the intentional infliction of emotional distress claim, the Court will not reduce counsel's fee request for that reason. *See Id.*

### 2. *Upward Adjustments*

■ The Court's discretion to adjust the loadstar upward is limited. *Rode,* 892 F.2d at 1183. A court may only adjust the loadstar upward to account for: (1) a delay in payment; (2) the superior quality of the representation; or (3) the necessity of attracting competent counsel for a contingency matter. *Id.* Counsel asserts two arguments for an upward adjustment. First, counsel argue for a 20% enhancement (commonly referred to as a contingency multiplier) to ensure the attraction of competent counsel for contingency matters. *Id.* In the alternative, counsel contend that the Court should award an 18% adjustment for delay in payment.

■ With respect to counsel's request for a 20% contingency multiplier, the Third Circuit addressed the propriety of contingency multipliers in *Rode* as follows:

The purpose of the contingency multiplier is to compensate counsel for the riskiness of undertaking the litigation. The fee applicant has a significant burden to carry to obtain a contingency multiplier. Contingency multipliers will be granted only in rare cases. In order to obtain a contingency multiplier, the applicant must establish: (1) how the market treats contingency fee cases as a class differently from hourly fee cases; (2) the degree to which the relevant

---

5. Mr. Wood's remaining hours were calculated as follows: 414.35 hrs. × 90% = 372.92 hrs.

6. Mrs. Matos's remaining hours were calculated as follows: 1252.8 hrs. × 90% = 1127.52 hrs.

market compensated for contingency; (3) that the amount determined by the market to compensate for contingency is not more than would be necessary to attract competent counsel both in the relevant market and in its case; (4) "that without an adjustment for risk the prevailing party 'would have faced substantial difficulties in finding counsel in the local or other relevant market.' "

*Rode,* 892 F.2d at 1184 (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 483 U.S. 711, 731–33, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987)). *See also Vargas v. Hudson County Board of Elections,* 949 F.2d 665 (3d Cir.1991). The affidavits submitted by counsel were devoid of any reference to the four legal requirements articulated in *Rode.* Faced with a lack of supporting evidence, the Court concludes that counsel failed to meet their burden of showing that a contingency enhancement is appropriate.[7] Therefore, counsel's request for a 20% enhancement, totaling $86,900 is denied.

With respect to counsel's request for a delay enhancement, they bear the burden of documenting the need for such an enhancement. *Gulfstream III Associates, Inc. v. Gulfstream Aerospace Corp.,* 995 F.2d 414, 425 (3d Cir.1993). In other words, counsel must set forth specific costs incurred as a result of the delay such as, expenses related to late payment of legal bills or interest expenses incurred on loans taken out to support the litigation. *See Gulfstream III,* 995 F.2d at 425 (delay enhancement granted when plaintiff produced evidence that it paid interest on loan taken to finance litigation); *Blum v. Witco Chem. Corp.,* 888 F.2d at 984–85 (granting delay enhancement when plaintiff's counsel certified that delay in payment was significant, and that it incurred interest on borrowed money to cover shortfalls). Because counsel have failed to submit *any* evidence of expenses incurred because of delay,

the Court denies their request for an 18% delay enhancement. *See Fletcher v. O'Donnell,* 729 F.Supp. 422 (E.D.Pa.1990)(delay multiplier inappropriate because applicant made no factual showing about any detriment was suffered by counsel due to delay).

### III. COSTS

Successful civil rights litigants are entitled to reimbursement of "costs" connected with litigating their claim as long as the costs are reasonably and necessarily incurred. *Planned Parenthood of Southeastern Pennsylvania v. Casey,* 869 F.Supp. 1190, 1201 (E.D.Pa.1994). Compensation is appropriate if the incurred costs are not unreasonable, unnecessary, or inadequately documented. *Coalition to Save Our Children v. State Board of Education,* 901 F.Supp. 824 (D.Del.1995).

ARCO objects to a number of the expenses claimed by counsel. First, ARCO objects to a charge of $3,385.40 for paralegal and support personnel because counsel failed to identify any of the tasks completed by these individuals. The Court agrees that these charges are inadequately documented, and therefore, $3,385.40 will be deducted from the costs claimed by counsel. *See Rode,* 892 F.2d at 1182 (court can deduct hours when fee petition inadequately documents hours claimed).

Second, ARCO objects to $1,350.45 in copying costs because the 9,003 copies made appear excessive and are undocumented, and because 10¢ per page, rather than the 15¢ per page charge requested by counsel, is the standard rate for copying. Counsel has submitted adequate documentation of the number of copies made, and the number of copies does not seem excessive in light of the voluminous pleadings, motions, and exhibits accompanying the litigation of

---

**7.** Counsel argue that a contingency enhancement is warranted because of the complexity of the case. (Pet.'s Mem. at 11–12). As is demonstrated by the four factors outlined in *Rode,* the complexity of the case is irrelevant when deciding whether to award a contingency enhancement. In fact, the Supreme Court has specifically refused to award a lodestar upward adjustment based on the alleged novelty and complexity of

the case because it considers those two factors to be fully and properly reflected in the attorney's number of billable hours and his/her hourly rates. *Blum v. Stenson,* 465 U.S. at 898, 104 S.Ct. 1541. However, even if counsel's argument was credited, counsel point to nothing specifically unusual, complex or novel about the plaintiff's case.

the case. With respect to the 15¢ charge, the Court agrees that a reasonable rate for photocopying is 10¢ per page. *See Woods v. Adams Run Associates,* 1997 WL 256966 at *7 (E.D.Pa. May 13, 1997)(citing *Poulter v. Ford Motor Co.,* 1997 WL 22673 at *3 (E.D.Pa. Jan.17, 1997))(finding 10¢ per page to be a reasonable cost for photocopying); *Scarsellato v. Ford Motor Co.,* 1997 WL 28713 (E.D.Pa. Jan.24, 1997)(same). Accordingly, the court will deduct $450.15 from plaintiff's request, and allow $900.30 in copying costs.

■ Third, ARCO objects to costs relating to office supplies because office supplies constitute overhead expenses which are subsumed in a law firm's hourly rate. The Court agrees that office supplies are part of overhead, and that the cost of such supplies is adequately reflected in the hourly rate charged by an attorneys. Therefore, the cost of office supplies is not recoverable as a cost. *Planned Parenthood of Southeastern Pennsylvania v. Casey,* 869 F.Supp. at 1201 (word processing charges are not recoverable because they are part of an attorney's overhead costs). *See also Jane L. v. Bangerter,* 61 F.3d 1505, 1517 (10th Cir.1995); *Kuzma v. I.R.S.,* 821 F.2d 930, 933 (2d Cir.1987). Accordingly, $1,899.56 shall be deducted from the costs claimed by Counsel.

■ Fourth, ARCO claims that a penalty of $1,600 incurred by plaintiff for withdrawing funds from his 401K funds is not recoverable as a cost of litigation. The Court agrees that this is an aspect of damages which should have been presented to the jury. Therefore, it is not appropriately charged as a cost and $1,600 will be deducted from the costs claimed by counsel.

■ Fifth, ARCO objects to a $1,600 charge for plaintiff's damages expert based on a contention that expert fees are not recoverable as costs. The Court notes that as a general rule, compensation paid in excess of the statutory per diem fee, mileage and subsistence allowance is not taxable as costs. *West Virginia Univ. Hospitals, Inc. v. Casey,* 885 F.2d 11, 31–35 (3d Cir.1989), *aff'd,* 499 U.S. 83, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991); *Wehr v. The Burroughs*

*Corp.,* 477 F.Supp. 1012 (E.D.Pa.1979)(citing J. Moore, 6 Federal Practice ¶ 54.77), *aff'd* 619 F.2d 276 (3d Cir.1980). However, in ADEA cases, the trial court has "equitable discretion" to award fees beyond the statutory amount where the expert's testimony is indispensable to the determination of the case. *West Virginia Univ. Hospitals, Inv. v. Casey,* 885 F.2d at 11; *Tevelson v. Life and Health Ins. Co. of America,* 1986 WL 12783 (E.D.Pa. Nov.6, 1986), *aff'd,* 822 F.2d 54 (3d Cir.1987). Here, the Court finds that the testimony of plaintiff's expert was important to plaintiff's presentation regarding the issue of whether damages were suffered by the plaintiff. The expert presented testimony without which the jury could not have properly calculated the damages suffered by Becker. For this reason, the expert witness' fee shall be appropriately considered as part of the costs.

■ Having concluded that compensation is appropriate, the Court addresses the appropriate fee to be awarded. Counsel claim that the fee paid to the expert was $1,600. A party requesting reimbursement for a fee paid to an expert has the burden of showing that the fee paid is reasonable. *See, e.g. Seidman v. American Mobile Systems,* 965 F.Supp. 612, 624 (E.D.Pa.1997)(disallowing increased expert rates in the absence of evidence that community billing rate for such experts had indeed increased). The fee paid is not reasonable merely because an expert demanded payment in that amount. Experts, like counsel, are required to show that the fee paid is the "prevailing market rate" for the type of work performed by an expert of the skill, reputation and experience in the relevant market for work of similar complexity.

In this case, counsel has presented a request for compensation of the expert in summary fashion, without reference to an hourly rate or the number of hours expended by the expert, and without reference to the prevailing rate charged in the relevant market. Thus, counsel has failed to demonstrate that the fee charged reflects the prevailing market rate. Because the expert undoubtably performed the work and the work was helpful to plaintiff, the Court concludes that an

expert witness fee of $1,000 in this case is reasonable.

 Finally, ARCO claims that the following expenses are undocumented and/or unnecessary: (1) $1,500 accountant's fee; (2) $550.00 in mileage and parking expenses (referred to by ARCO as gas and mileage); (3) $500 for deposition subpoenas; (4) $497.80 in delivery fees; (5) $440 in meal expenses; (6) $124 for deposition readers; and (7) $97 in Federal Express charges. The Court finds all except two of the above listed expenses to be reasonable and adequately documented. Counsel has failed to provide any documentation of the $1,500 charge for Mr. J.T. Fabrizio, who was identified as an accountant. Neither an invoice nor a description of the tasks performed by Mr. Fabrizio were submitted by counsel. Therefore, since the court is unaware of what Mr. Fabrizio did, or how he did it, the cost of Mr. Fabrizio's services will be excluded from compensation. In addition, plaintiff's counsel has claimed $440 in charges for meals ($20 per day for each attorney for 11 days). In order for counsel to receive reimbursement for the cost of meals, the expense must be adequately documented and reasonable. *Pozzi v. Smith*, 952 F.Supp. 218, 227 (E.D.Pa.1997). Because counsel have not submitted supporting receipts, these charges will be excluded as undocumented. In addition, even assuming the meal expenses were documented, the Court expresses reservations as to whether it is proper to charge the defendant for lunch and dinner costs, which are incurred during a trial by counsel from the local area. *See Sinclair v. Insurance Co. of North America*, 609 F.Supp. 397, 409 (E.D.Pa.1984)("The cost of attorney meals will be disallowed as other than extraordinary expenses"), *aff'd* 782 F.2d 1029 (3d Cir.1986)(Table); *Greenway v. Buffalo Hilton Hotel*, 951 F.Supp. 1039, 1071 (W.D.N.Y.1997)(finding that "normal meals are not reasonable expenses" when counsel live in the area), *aff'd*, 143 F.3d 47 (2d Cir. 1998).

## IV. ATTORNEY'S FEES FOR PREPARING THE FEE PETITION

 Plaintiff is entitled to recover for the time spent by counsel in preparing the fee application. *See Prandini v. National Tea Co.*, 585 F.2d 47, 52–53 (3d Cir.1978). Counsel claims that counsel spent 64.1 hours, at $250 per hour, in preparing the fee petition. Defendants do not object to the amount of time spent on the fee petition. In the absence of an objection, the Court may not decrease the number of hours requested by plaintiff's counsel, i.e. 29.10 hours by Mr. Wood and 35 hours by Mrs. Matos. Applying the hourly rates previously assigned to Mr. Wood and Mrs. Matos, the Court finds that the reasonable fee for preparation of the fee petition is $13,081.50.[8]

## IV. MOTION TO MOLD THE VERDICT

### A. *Prejudgment Interest On Back Pay Award*

 Whether to award prejudgement interest is "committed to the sound discretion of the trial court." *Young v. Lukens Steel Co.*, 881 F.Supp. 962, 977 (E.D.Pa.1994)(citing *Gelof v. Papineau*, 829 F.2d 452 (3d Cir.1987)). Ordinarily, prejudgement interest compensates a victim of discrimination for the loss of use of money he or she would have had but for the unlawful discrimination. *Id.* "Indeed, prejudgment interest should be presumed in backpay awards under the ADEA unless the equities require otherwise." *Id.*

 In this case, the defendant was found to have intentionally discriminated against the plaintiff, and the defendant has failed to provide any credible reason why it would be inequitable to award prejudgment interest on the plaintiff's back pay award. Thus, the defendant shall pay prejudgment interest on the $186,095 back pay award.

 "The applicable prejudgment interest rate is left to the discretion of the Court." *Shovlin v. Timemed Labeling Systems, Inc.*, 1997 WL 102523 (E.D.Pa. Feb.28,

---

8. Calculated as follows:

| | |
| --- | --- |
| Mr. Wood 29.1 hrs. at $215/hr. = | $ 6,256.50 |
| Mrs. Matos 35 hrs. at $195/hr. = | $ 6,825.00 |
| | 13,081.50 |

1997); *Young,* 881 F.Supp. at 977 (E.D.Pa. 1994). However, the Third Circuit has stated that the district court may look to the interest rate contained in the federal post-judgment interest statute, 28 U.S.C. S 1961, for guidance. *Sun Ship, Inc. v. Matson Navigation, Co.,* 785 F.2d 59, 63 (3d Cir. 1986); *see also Young,* 881 F.Supp. at 977; *Shovlin,* 1997 WL 102523 at *2. Section 1961(a) of Title 28 provides for post-judgment interest as follows:

> Such interest shall be calculated from the date of the entry of the judgement, at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of the fifty-two week United States Treasury bills settled immediately prior the date of judgment.

The Court has determined the *average 52-week* Treasury Bill rate from the date the plaintiff was terminated, March 4, 1994, to the date judgment was entered, November 3, 1997, to be 5.67%. *See* 52–Week T–Bill Rate Table provided in the statutory notes of 28 U.S.C. § 1961. The Court will calculate simple interest on the plaintiff's back pay award at an interest rate of 5.67%. *See Shovlin,* 1997 WL 102523 at *2 (using same method of computing interest). Therefore, the prejudgment interest on the plaintiff's $186,095 back pay award is $10,551.57, and the judgment shall be amended to include this amount.

### B. *Postjudgment Interest*

Plaintiff next requests post-judgment interest. Post-judgment interest is governed by 28 U.S.C. § 1961. As mentioned above, § 1961 states that the interest rate to be used is the 52–week Treasury Bill price on the day of the verdict. On November 3, 1997, the rate was 5.49%. Accordingly, the plaintiff shall receive post-judgment interest at a rate of 5.49% from November 3, 1997. *See* 28 U.S.C. § 1961(a). In accordance with 28 U.S.C. § 1961, the interest shall be computed daily, and shall be compounded annually. 28 U.S.C § 1961(b).

### C. *Tax Consequences*

█ Citing *Gelof,* 829 F.2d at 452, the Plaintiff contends that he is entitled to compensation for the "negative tax consequences" he will incur as a result of receiving his back pay and front pay award in one lump sum. The Plaintiff's reliance on *Gelof* is without merit, as the Third Circuit clearly pointed out in footnote 2 of that opinion: "In light of [Defendant's] concession that the judgement should properly include the negative tax impact of a lump sum payment as an element of damages, we do not address the question of whether such an award should be made in all back pay cases." *Id.* at 455 n. 2. In addition, courts that have specifically considered the issue have denied motions to mold verdicts on this basis. *See Shovlin,* 1997 WL 102523; *Young,* 881 F.Supp. at 978. Therefore, the plaintiff's request is denied.

## APPENDIX A

### I. ATTORNEY'S FEES

| | Requested | Amount Granted |
|---|---|---|
| Litigation Fees | $434,500.50 [9] | $300,044.20 [10] |
| 20% Enhancement | $ 86,900.00 | $ 0 |
| Overtime | $ 24,996.25 | $ 0 |
| Fee Petition Fees | $ 16,025.00 [11] | $ 13,081.50 [12] |

**9.** Calculated as follows:

| Mr. Wood 465.9 hrs. at $250/hr. = | $116,475.00 |
|---|---|
| Mrs. Matos 1272.23 hrs. at $250/hr. = | $318,057.50 |
| | $434,532.50 |

Although the bills submitted by counsel totaled $434,532.50, counsel only requested $434,500.

**10.** Calculated as follows:

| Mr. Wood 372.92 hrs. at $215/hr. = | $ 80,177.80 |
|---|---|
| Mrs. Matos 1272.23 hrs. at $195/hr. = | $219,866.40 |
| | $300,044.20 |

**11.** Calculated as follows:

| Mr. Wood 29.1 hrs. at $250/hr. = | $ 7,275.00 |
|---|---|
| Mrs. Matos 35 hrs. at $250/hr. = | $ 8,750.00 |
| | $16,025.00 |

| | Requested | Amount Granted |
|---|---|---|
| TOTAL | $562,421.75 | $313,125.70 |

II. COSTS

| | | |
|---|---|---|
| Amount Requested | | $ 36,613.95 |
| Less: Amounts Deducted | | |
| —Undocumented Paralegal and Support Staff charges | $ 3,385.40 | |
| —Photocopying Costs | $ 450.15 [13] | |
| —Office Supplies (Overhead) | $ 1,899.56 | |
| —401K Expense for Early Withdrawal of Funds | $ 1,600.00 | |
| —Expert Fee | $ 600.00 [14] | |
| —Accountant's Fee | $ 1,500.00 | |
| —Meal Expenses | $ 440.00 | |
| | | −$ 9,875.11 |
| Amount Awarded | | $ 26,738.84 |

III. TOTAL

| | |
|---|---|
| Attorney's fees awarded | $313,125.70 |
| Costs Awarded | $ 26,738.84 |
| Total Award | $339,864.54 |

## AMENDED ORDER [1]

AND NOW, this 4th day of August, 1998, upon consideration of petition by plaintiff for attorney's fees and costs (doc. no. 118); plaintiff's memorandum of law in support of its petition for attorney's fees (doc. no. 119); defendant's response thereto (doc. no. 123); defendant's memorandum of law in opposition to plaintiff's petition for attorney's fees (doc. no. 125); reply by plaintiff to defendant's response (doc. no. 129); defendant's motion for leave to file a surreply memorandum in the attached form (doc. no. 132); plaintiff's motion to supplement plaintiff's petition for attorney's fees and costs (doc. no. 133); defendant's memorandum of law in opposition to plaintiff's motion to supplement (doc. no. 134); plaintiff's motion for leave to file a reply to defendant's surreply memoran-

dum in support of plaintiff's motion for attorney's fees and costs (doc. no. 137); plaintiff's response to defendant's opposition to plaintiff's motion to supplement plaintiff's petition for attorney's fees and costs (doc. no. 138); and plaintiff's motion to mold the verdict (doc. no. 117); defendant's response thereto (doc. no. 122); defendant's memorandum of law in opposition to plaintiff's motion to mold the verdict (doc. no. 126); plaintiff's reply to defendant's response to plaintiff's motion to mold the verdict (doc. no. 128); and for the reasons stated in the Court's Memorandum of July 22, 1998, it is hereby **ORDERED** as follows:

1. As to docket number 118, petition by plaintiff for attorney's fees and costs, the motion is **GRANTED IN PART AND DENIED IN PART** as follows: plaintiff's coun-

12. Calculated as follows:

| | |
|---|---|
| Mr. Wood 29.1 hrs. at $215/hr. = | $ 6,256.50 |
| Mrs. Matos 35 hrs. at $195/hr. = | $ 6,825.00 |
| | 13,081.50 |

13. Counsel requested photocopying costs of $1,350.45 which was comprised of 9003 copies at 15¢/page. The Court reduced copying charges to 10¢/page to reach a total of $900.30 in photocopying expenses. The difference between the two figures, $450.15, was deducted from costs claimed by counsel.

14. Counsel requested an expert witness fee of $1,600.00 for plaintiff's damages expert. The Court determined that $1,000.00 was a reasonable fee. Therefore, $600 was deducted from costs claimed by counsel.

1. Upon request of plaintiff's counsel, and there being no objection from defendant, the Court amends its Order of July 22, 1998 to reflect the fact that pursuant to 28 U.S.C. § 1961, post-judgment interest should be applied to the entire judgment rather than just the front pay damages.

sel shall be awarded $313,125.70 in attorney's fees and $26,738.84 in costs;

2. As to docket number 132, defendant's motion for leave to file a surreply memorandum in the attached form, the motion is **GRANTED**;

3. As to docket number 133, plaintiff's motion to supplement plaintiff's petition for attorney's fees and costs, the motion is **GRANTED**;

4. As to docket number 137, plaintiff's motion for leave to file a reply to defendant's surreply memorandum in support of plaintiff's motion for attorney's fees and costs, the motion is **GRANTED**;

5. As to docket number 117, plaintiff's motion to mold the verdict, the motion is **GRANTED IN PART AND DENIED IN PART** as follows: (a) the judgment is amended to include $10,551.57 in pre-judgment interest, (b) pursuant to 28 U.S.C. § 1961, the plaintiff shall receive post-judgment interest at a rate of 5.49% from November 3, 1997 on the entire judgment; (c) plaintiff's request that the verdict be molded to compensate for "negative tax consequences" is denied.

**AND IT IS SO ORDERED.**